# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date:   May 4, 2015**

**NO. 34,120**

**STATE OF NEW MEXICO,**

   Plaintiff-Petitioner,

v.

**ABRAHAM BACA,**

   Defendant-Respondent.


**ORIGINAL PROCEEDING ON CERTIORARI**
**Stephen D. Pfeffer, District Judge**

Hector H. Balderas, Attorney General
Nicole Beder, Assistant Attorney General
James W. Grayson, Assistant Attorney General
Donna Bevacqua-Young, Assistant Attorney General
Santa Fe, NM

for Petitioner


Ben A. Ortega
Albuquerque, NM

for Respondent

The Law Office of Lucero & Howard, L.L.C.
Leon F. Howard III
Albuquerque, NM

Laura Louise Schauer Ives
Albuquerque, NM

for Amicus Curiae American Civil Liberties Union

**OPINION**

**DANIELS, Justice.**

{1}    State and federal constitutional protections against twice being placed in jeopardy for the same criminal offense preclude a second prosecution after a defendant has been acquitted but do not necessarily preclude reprosecution after a procedural dismissal, particularly one made at the request of the accused. Even where a verbatim record is available, determining the true nature of the termination in the first proceeding is not always an easy task, requiring judicial sensitivity to both the defendant's double jeopardy protections and the public interest in one full and fair opportunity to prosecute a criminal case. In cases where there is a limited record for review, the task is even more difficult.

{2}    In this case, we affirm the district court's determination that a nonrecord magistrate court's termination of a DWI trial for a filing defect, on motion of the defendant and before the State had completed presenting evidence in its case in chief, was a procedural dismissal rather than an acquittal on the merits. We therefore affirm the district court's ruling that the State was not constitutionally barred from further prosecution.

**I.    BACKGROUND**

{3}     Defendant Abraham Baca, at the time a New Mexico State Police officer, was arrested by Sergeant Martin Trujillo for aggravated DWI and driving left of center of a roadway. The State filed a criminal complaint against Defendant in Rio Arriba County Magistrate Court. The complaint alleged that after Defendant had been stopped for weaving and crossing into the oncoming traffic lane, Sergeant Trujillo observed numerous signs of intoxication, including a strong odor of alcohol, red bloodshot watery eyes, slurred speech, and failure of field sobriety tests. The complaint also alleged that Defendant refused to submit to any breath alcohol testing, either at the scene or at the sheriff's office, before he was booked and released on bond.

{4}     Defendant entered a plea of not guilty and waived his right to a jury trial. When the prosecutor failed to appear at a pretrial conference, apparently because an address change resulted in the prosecutor's nonreceipt of the hearing notice, the magistrate court dismissed the case without prejudice. A day later, the State refiled the charges in a new magistrate court criminal complaint.

{5}     The State's filed witness lists indicate that it intended to call seven witnesses at trial. According to the first filed criminal complaint, two of those witnesses, Sergeant Trujillo and Deputy Jose Martinez, were officers present at the scene of

arrest who had "observed Mr. Baca's driving."

{6}     The case came before magistrate Judge Alex M. Naranjo for trial. As we have observed in the past, "[b]ecause the magistrate court proceedings are not recorded, what actually transpired at this setting is not of record." *State v. Montoya*, 2008-NMSC-043, ¶ 2, 144 N.M. 458, 188 P.3d 1209; *see* NMSA 1978, § 35-1-1 (1968) ("The magistrate court is not a court of record.").

{7}     What does appear in the magistrate court record is that on the day of trial, the magistrate judge entered a written order (the Trial Order) dismissing the case with prejudice "upon motion made by defense attorney Ben Ortega per rule NMRA 6-506-A (C) (D)" and "per second motion that officer testimony be suppressed." The parties agree that, although the defense had not raised the matter by pretrial motion, the refiled complaint had not complied with Rule 6-506A(C) NMRA (2004, amended effective 2014).[1] Rule 6-506A(C) is a procedural rule requiring that after the dismissal of a complaint without prejudice, refiled complaints containing the same charges must be captioned "Refiled Complaint" and must contain specified information about the earlier case so that the court can be alerted to the need to treat

---

[1]In this opinion, the amendment applicable to all references to Rule 6-506A NMRA is the 2004 amendment. The date parenthetical is hereafter omitted from references to this rule.

the later case as a continuation of the first, pursuant to Rule 6-506A(D).

{8} The Trial Order was entered on a standardized court form that contained, among other options, fields for recording the magistrate's determination of guilty or not guilty, but these fields were left completely blank and instead the order recited that the cause was "dismissed with prejudice."

{9} The State filed a notice of appeal in district court pursuant to NMSA 1978, Section 35-13-1 (1968), which authorizes a party "aggrieved" by a magistrate court judgment or final order to appeal to district court within fifteen days of its issuance.

{10} Nearly two months after the notice of appeal was filed and while the case was pending before the district court, the magistrate court sua sponte entered a new signed order in its own files, titled "Amended Final Order on Criminal Complaint Numc [sic] Pro Tunc" (the Amended Order). The Amended Order stated,

> A motion was made by defense attorney Ben Ortega to suppress the testimony of Sergeant Martin Trujillo for violation of NMRA 6-506-A(C)(D). Sergeant Martin Trujillo was the arresting Officer. A second motion was made by defense attorney Ben Ortega for a directed verdict of not guilty due to insufficient evidence to proceed. Motion to suppress and directed verdict of not guilty were granted.
>
> THE DEFENDANT IS THEREFORE ACQUITTED.

{11} After the Amended Order was filed in magistrate court, defense counsel moved the district court to dismiss the appeal on double jeopardy grounds, arguing that the

4

magistrate court had acquitted him. Lacking the benefit of a complete record, the district court held a hearing to reconstruct the magistrate proceedings in order to determine whether the magistrate judge had dismissed the case on procedural grounds as indicated in the original Trial Order or had acquitted Defendant as indicated in the postappeal Amended Order. In support of the latter theory, the defense relied primarily on the testimony of the magistrate judge.

{12}     The magistrate judge testified in district court that Sergeant Trujillo was the first and only one of the seven people listed on the State's witness list who actually testified at the nonjury trial in the magistrate court. When Sergeant Trujillo completed his testimony at that trial, the defense "challenged" the State's criminal complaint, arguing that the State's refiled criminal complaint had not included the prior-case information required by Rule 6-506A(C). Defense counsel made an oral motion that the magistrate judge should suppress Sergeant Trujillo's testimony as a sanction for that violation. After the magistrate judge granted the motion to suppress Sergeant Trujillo's testimony, the defense moved for a "directed verdict of not guilty." The magistrate judge testified that he then took a short recess to consider that motion.

{13}     The magistrate judge testified that when he returned and began announcing his ruling, the State interrupted to say that it was going to voluntarily dismiss the current

5

complaint against Defendant. The magistrate judge responded that he "didn't need to be listening to her dismissing the case, that [he] would be dismissing the case." At that point, defense counsel "reminded" the magistrate judge that he should "not dismiss the case" but instead should "find Mr. Baca not guilty." The magistrate judge testified before the district court that he responded, "So be it," and that he orally stated that Defendant would be found not guilty. However, no such ruling was contained in the official written Trial Order.

{14}     When defense counsel asked the magistrate judge in district court why he granted the "directed verdict" of not guilty, the magistrate judge answered that it was for the State's violation of Rule 6-506A and because the testimony of "the only [witness] that testified," Sergeant Trujillo, whom the magistrate judge described as "the key witness for the State," had been suppressed.

{15}     On the State's cross-examination in district court, the magistrate judge testified that he would not have granted a directed verdict before the State was done presenting all of its witnesses. The magistrate judge acknowledged that the State had other witnesses waiting to testify and that the State had not rested its case. He was also aware that the written Trial Order he entered did not indicate a determination of guilt or innocence despite the fact that the order was a standard court form, with fields

specifically for such determinations, and that he had instead left the fields relating to guilt or innocence empty.

{16} In response to questions from the district court about the Amended Order purporting to retroactively acquit Defendant after the case had been appealed, the magistrate judge stated that he did not know who prepared it, could not remember anyone communicating with him personally about it, and could only speculate that a clerk, who had not been present during the trial, had chosen to prepare it at a later time. Whatever its source may have been, he acknowledged that this Amended Order, not on an official court form, was the first nonstandard custom-prepared amended disposition order that he had ever entered in a case in his eleven years as a magistrate.

{17} After hearing all testimony presented by the parties for reconstruction of the magistrate court record, the district court struck the Amended Order and declined to consider it, finding that the Amended Order was not a true correction of the record and that the Trial Order more accurately reflected what had actually occurred at the aborted trial in the magistrate court. The district court found that the magistrate judge's premature termination of the case had been a dismissal to sanction the State's filing of a nonconforming criminal complaint, rather than an acquittal on the merits. Concluding that the State's appeal did not result in double jeopardy, the district court

accordingly denied Defendant's motion to dismiss the appeal.

{18} Defendant appealed the district court's order denying his motion to dismiss to the Court of Appeals. The Court of Appeals reversed the district court, concluding that because "the magistrate court's dismissal constituted an acquittal and, therefore, the State was barred from appealing," it was inappropriate to address "whether . . . Judge Naranjo's ruling suppressing Sergeant Trujillo's testimony was erroneous." *See State v. Baca*, 2013-NMCA-060, ¶ 23, 303 P.3d 858. We granted certiorari to review the State's contentions that the Court of Appeals failed to give due deference to the district court's factual findings in reconstructing the events that took place in the magistrate court and to clarify the distinctions between acquittals on the merits and procedural dismissals in our double jeopardy jurisprudence.

## II.    DISCUSSION

{19} The propriety of the magistrate judge's Trial Order suppressing the testimony of a key State witness and terminating prosecution without hearing the testimony of the remaining six State witnesses or considering any other evidence relating to guilt or innocence, all as a sanction for the State's refiled complaint lacking identifying details required by a procedural rule, is not before us for review in this appeal. *But see State v. Harper*, 2011-NMSC-044, ¶ 21, 150 N.M. 745, 266 P.3d 25 (cautioning that

8

the "exclusion of witnesses is a severe sanction that raises questions about the fairness of the judicial process" and holding that, "like outright dismissal of a case, the exclusion of witnesses should not be imposed except in extreme cases, and only after an adequate hearing to determine the reasons for the violation [of a rule or court order] and the prejudicial effect on the opposing party"). We therefore address only the issues presented to us regarding the constitutionality under the Double Jeopardy Clause of the State's efforts to further prosecute the DWI case against Defendant.

**A. Whether the Magistrate Judge's Termination of Defendant's Case Was Appealable Depends on Whether It Was an Acquittal on the Merits for Insufficiency of Evidence or a Nonmerits Procedural Dismissal Made at the Request of the Accused**

{20} We start by recognizing that the Double Jeopardy Clauses of the Fifth Amendment of the United States Constitution and Article II, Section 15 of the New Mexico Constitution prevent the State from using its resources to wear down a defendant by "'repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.'" *County of Los Alamos v. Tapia*, 1990-NMSC-038, ¶ 16, 109 N.M. 736, 790 P.2d 1017 (quoting *Green v. United States*, 355 U.S. 184, 187-88 (1957)), *overruled on other grounds by City of*

9

*Santa Fe v. Marquez*, 2012-NMSC-031, ¶ 25, 285 P.3d 637; *see* U.S. Const. amend. V ("No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."); N.M. Const. art. II, § 15 ("[N]or shall any person be twice put in jeopardy for the same offense."). These clauses serve to protect a defendant's important right to receive a single judgment of guilt or innocence. *See United States v. Scott*, 437 U.S. 82, 99-100 (1978).

{21} This Court has emphasized that "[p]erhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that a verdict of acquittal . . . [cannot] be reviewed, on error or otherwise, without putting a defendant twice in jeopardy, and thereby violating the Constitution." *State v. Lizzol*, 2007-NMSC-024, ¶ 7, 141 N.M. 705, 160 P.3d 886 (alteration and omission in original) (internal quotation marks and citation omitted). "[T]he State is barred from appealing when a defendant is acquitted by the trial court no matter how egregiously erroneous the trial court's ruling," even where the determination of insufficiency of evidence results from an erroneous evidentiary ruling. *Id.* ¶ 15.

{22} But not all terminations of a criminal trial invoke double jeopardy protections. The United States Supreme Court has made it clear that a defendant who "obtains the termination of the proceedings against him in the trial court without any finding by

a court or jury as to his guilt or innocence . . . has not been 'deprived' of his valued right to go to the first jury." *Scott*, 437 U.S. at 100. "[O]nly the public has been deprived of its valued right to 'one complete opportunity to convict those who have violated its laws.'" *Id.* (citation omitted). Consequently, "[n]o interest protected by the Double Jeopardy Clause is invaded when the Government is allowed to appeal and seek reversal of such a midtrial termination of the proceedings in a manner favorable to the defendant." *Id.*; *see also Montoya*, 2008-NMSC-043, ¶ 11 (confirming that the State is entitled to appeal a final order dismissing its case on a procedural ground).

{23}     The United States Supreme Court has recently summarized the relevant constitutional distinction between merits acquittals and procedural dismissals:

> Thus an "acquittal" includes "a ruling by the court that the evidence is insufficient to convict," a factual finding [that] necessarily establish[es] the criminal defendant's lack of criminal culpability," and any other "rulin[g] which relate[s] to the ultimate question of guilt or innocence. These sorts of substantive rulings stand apart from procedural rulings that may also terminate a case midtrial, which we generally refer to as dismissals or mistrials. Procedural dismissals include rulings on questions that "are unrelated to factual guilt or innocence," but "which serve other purposes," including "a legal judgment that a defendant, although criminally culpable, may not be punished" because of some problem like an error with the indictment.

*Evans v. Michigan*, ___ U.S. ___, 133 S. Ct. 1069, 1075 (2013) (alterations in

original) (citations omitted).

{24}     Because "the double jeopardy consequences of each [termination] differ" and because "'[t]he law attaches particular significance to an acquittal' [such that] a merits-related ruling concludes proceedings absolutely," *id.* (citation omitted), we therefore must address whether the district court was correct in determining that the magistrate judge's termination of the first trial on Defendant's request constituted a procedural dismissal, which the State could appeal, or an acquittal, which the Double Jeopardy Clause permanently insulates from continued prosecution.

**B.     We Defer to the District Court's Findings of Fact If Supported by Substantial Evidence but Review Its Conclusions of Law De Novo**

{25}     This case involves questions of fact, particularly in determining what happened in the magistrate court, and questions of law applicable to those facts. "We generally review double jeopardy claims de novo . . . , [but] where factual issues are intertwined with the double jeopardy analysis, we review the trial court's fact determinations under a deferential substantial evidence standard of review." *See State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737 (citation omitted). "In doing so, we will not weigh the evidence or substitute our judgment for that of the trial court, and all reasonable inferences supporting the fact findings will be accepted even if some evidence may have supported a contrary finding." *Id.* (citation omitted). It is the

12

district court—not the magistrate court—to which we defer in this case because it was the district court that had to find the facts on which to apply the law in ruling on the motion to dismiss.

{26} The magistrate court file ordinarily should assist in determining whether there has been an acquittal. Our Rules of Criminal Procedure for the Magistrate Courts require a filed order specifying the nature of the court's disposition of each criminal complaint. *See* Rule 6-701 NMRA ("A final order shall be entered in every case. If the defendant is found guilty, a judgment of guilty shall be rendered. If the defendant has been acquitted, a judgment of not guilty shall be rendered."); *see, e.g.*, *City of Farmington v. Piñon-Garcia*, 2013-NMSC-046, ¶ 20, 311 P.3d 446 (holding that the record in a court of limited jurisdiction reflected a dismissal rather than an acquittal); *Montoya*, 2008-NMSC-043, ¶ 20 (looking to the face of a magistrate court order in determining the nature of the nonrecord proceedings). We have repeatedly emphasized the importance of "clear communication from the orders issued by all courts, including courts of limited jurisdiction," in part "because one function of final orders is as an avenue for appellate review of the issues in a case." *Id.* ¶ 21.

{27} On appeal from the magistrate court, "the record on appeal" must include "the judgment or order sought to be reviewed." Rule 1-072(G)(3) NMRA. If an

appropriate order is not in the record or if the order is ambiguous, reviewing courts normally look to the facts contained in the transcript of proceedings for clarification of the order; and if a transcript of proceedings is unavailable, a substitute record may be created. *See* Rule 1-072(H) ("If anything material . . . is omitted from the [magistrate court] record on appeal by error . . . , the district court, on proper suggestion or on its own initiative, may direct that the omission be corrected . . . ."); *State v. Schoonmaker*, 2008-NMSC-010, ¶¶ 6, 16, 143 N.M. 373, 176 P.3d 1105 (reviewing on certiorari to the Court of Appeals based on a record reconstructed in the district court), *overruled on other grounds by State v. Consaul*, 2014-NMSC-030, ¶ 38, 332 P.3d 850. One way courts recreate necessary records is to hold a reconstruction hearing and make findings of fact based on the evidence presented at that hearing, as the district court did here. *See Schoonmaker*, 2008-NMSC-010, ¶¶ 6, 16 (relying in part on findings that the district court determined in a reconstruction hearing to create a record for a prior off-the-record chambers hearing). And if necessary, a reviewing court may require the judge who presided below to testify. *See State v. Martinez*, 2002-NMSC-008, ¶ 16, 132 N.M. 32, 43 P.3d 1042 (holding that the original trial judge may testify before the judge conducting the reconstruction hearing but may not both testify and preside); *see also State v. Gallegos*, 2007-

14

NMCA-112, ¶¶ 13, 19, 142 N.M. 447, 166 P.3d 1101 (holding that a district court had authority on appeal to supplement a magistrate court record with the assistance of the magistrate judge's testimony to determine the facts necessary to assess the legal validity of a no-contest plea).

{28} Recognizing the authority of the district court as a factfinder in reconstructing the magistrate court nonrecord proceedings, we now address whether substantial evidence supported the factual findings made by the district court.

**C.** **Substantial Evidence Supports the District Court's Findings Concerning the Nonrecord Proceedings Before the Magistrate Judge**

{29} The district court was faced with conflicting magistrate court orders, the contemporaneous Trial Order reflecting a nonmerits dismissal and the postappeal Amended Order reflecting an acquittal on the merits. It was necessary for the district court to determine which order, if either, accurately characterized the action of the magistrate judge in terminating the case before him.

{30} However the magistrate judge chose to label his own ruling in either of his conflicting orders or in his testimony before the district court, our double jeopardy precedents and those of the United States Supreme Court are in agreement that a trial court's own description of its ruling is not controlling. *See, e.g.*, *Lizzol*, 2007-NMSC-024, ¶ 15 ("[W]hether a defendant was acquitted does not depend on the trial court's

15

characterization of its ruling."); *Martinez v. Illinois*, ___ U.S. ___, ___, 134 S. Ct. 2070, 2076 (2014) ("[W]e have emphasized that what constitutes an acquittal is not to be controlled by the form of the judge's action; it turns on whether the ruling of the judge, whatever its label, actually represents a resolution . . . of some or all of the factual elements of the offense charged. Our decision turns not on the form of the trial court's action, but rather whether it serve[s] substantive purposes or procedural ones." (alterations and omission in original) (internal quotation marks and citations omitted)). Otherwise, we risk impeding the State's ability to prosecute crimes before a court has a chance to determine innocence or guilt. *See Montoya*, 2008-NMSC-043, ¶¶ 20, 22 (holding that absent a finding that a magistrate's disposition order was predicated on an evaluation of guilt or innocence, the State has a constitutional right to appeal an order of dismissal and seek a trial de novo in district court).

{31} According to the magistrate judge's testimony, he granted Defendant's motion for a "directed verdict" of acquittal after he granted Defendant's motion to suppress Sergeant Trujillo's testimony prior to hearing the remainder of the State's witnesses. A directed verdict, technically appropriate only in cases tried by a jury, requires a court to decide at the conclusion of the state's case "whether the direct or circumstantial evidence admitted at trial, together with all reasonable inferences to

16

be drawn therefrom, will sustain a finding of guilt beyond a reasonable doubt." *State v. Smith*, 1979-NMSC-020, ¶ 20, 92 N.M. 533, 591 P.2d 664; *see Mayer v. Smith*, ____-NMCA-___, ¶ 7 (No. 32,338, Mar. 2, 2015), *petition for cert. filed*, 2015-NMCERT-___ (No. 35,207, Apr. 1, 2015) (noting that "in a nonjury trial, motion for a directed verdict [is], in effect, a motion to dismiss" for insufficiency of the evidence) (internal quotation marks and citation omitted); *see also* Rule 5-607(E), (K) NMRA (requiring a district court "out of the presence of the jury" and both after the state has presented its case in chief and again after the submission of all evidence to "determine the sufficiency of the evidence, whether or not a motion for directed verdict is made").

{32} New Mexico precedent gives a trial court's dismissal based on insufficient evidence to support a conviction the effect of an acquittal, whether or not characterized as a directed verdict or other resolution of guilt or innocence. In *Marquez*, the trial court suppressed the evidence in a DWI prosecution and dismissed the DWI charge after the state had rested its case. *See* 2012-NMSC-031, ¶¶ 8, 10. We held that once the state rested its case and the trial court suppressed the evidence and dismissed the case, the trial court "implicitly" concluded that the evidence was insufficient to support the DWI charge. *Id.* ¶ 18. This ruling, however characterized,

had the "legal effect of an acquittal." *Id.* ¶ 28.

{33}     In *Lizzol*, 2007-NMSC-024, ¶ 4, the trial court suppressed the state's breath alcohol test results on evidentiary grounds. After ensuring that the state had presented all its evidence and rested its case, the trial court orally ruled that the defendant was "not guilty at this point" and issued a written order dismissing the case. *Id.* We held that "[a]bsent the [breath test results], the judge concluded that the [s]tate lacked evidence sufficient to convict [the defendant]." *Id.* ¶ 24. This ruling, however characterized by the trial judge, had the legal effect of an acquittal. *See id.* ¶ 29.

{34}     A true acquittal on the merits, even prior to the close of evidence, must result in protection from further jeopardy. *See Fong Foo v. United States*, 369 U.S. 141, 142-43 (1962) (per curiam). "[W]hen a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous." *Sanabria v. United States*, 437 U.S. 54, 64 (1978). But *Fong Foo* and *Sanabria* do not preclude reprosecution after rulings that did not constitute true acquittals. *See Gonzalez v. Justices of Mun. Court of Boston*, 382 F.3d 1, 11 (1st Cir. 2004), *judgment vacated*, 544 U.S. 918 (2005), *and adhered to on remand*, 420 F.3d 5, 10 (1st Cir. 2005) (holding that retrial is allowed where the trial court did not actually acquit the defendant).

18

{35}    The Trial Order included the two rulings made by the magistrate judge in this case. The first, suppression of Sergeant Trujillo's testimony as a sanction for the State's noncompliant pleading, was not an evaluation of the sufficiency of the State's evidence. *See Montoya*, 2008-NMSC-043, ¶ 17 (stating that the suppression of evidence is "in no sense a decision on the quantum of proof offered by the [state], on its probative value, on the credibility of the evidence, or on any other question relating to the sufficiency of the [state's] case." (quoting *Tapia*, 1990-NMSC-038, ¶ 8)).

{36}    Understanding the magistrate judge's second ruling, terminating the trial, is critical to determining whether double jeopardy protections prohibit Defendant's retrial. Was the termination based on finding the State's evidence insufficient or was it a procedural dismissal related to the noncompliant complaint or the resulting suppression of Sergeant Trujillo's testimony? As reflected in its filed witness list, the State had a number of other witnesses waiting to testify on the merits, including another officer who had observed Defendant's driving and had been present at the scene of arrest. There is no indication that the magistrate judge considered the potential testimony of the remaining witnesses or made any other determination that the State's evidence was insufficient to prove Defendant had been driving under the

influence of alcohol. In fact, the magistrate testified before the district court that he would not have granted a "directed verdict" before the State finished presenting all of its witnesses. *See Montoya*, 2008-NMSC-043, ¶ 18 (noting that once some evidence is suppressed in the magistrate court, the State is entitled "to pursue its case with its remaining evidence, dismiss its case with prejudice or dismiss its case and refile it in district court").

{37}    The district court considered both the Trial Order, reflecting procedural dismissal and specifically not acquittal, and the Amended Order, changing the magistrate judge's characterization of his own actions from dismissal to acquittal. Both orders recite that Defendant moved to dismiss the case based on a violation of Rule 6-506A. The district court also heard the magistrate judge's testimony that he had intended to dismiss the case on Defendant's motion prior to hearing all the evidence as a sanction for the State's violation of Rule 6-506A.

{38}    Determining compliance with Rule 6-506A is a purely procedural matter because it does not require a magistrate to evaluate the sufficiency of evidence. The rule merely "prescribe[s] the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." *See Black's Law Dictionary* 1398 (10th ed. 2014) (defining "procedural law"). The State's

violation of the Rule 6-506A(C) pleading requirements was a procedural defect that did not trigger an acquittal because it was unrelated to the sufficiency of the State's evidence.

{39} The district court heard and rejected the magistrate judge's testimony that he terminated the first trial because he had determined the Defendant was not guilty, as recited in the Amended Order. Before denying and striking the Amended Order, the district court reviewed the circumstances of the termination, including facts that the magistrate never heard the testimony of most of the State's witnesses, that the termination of the magistrate court trial was the sole result of a procedural violation of pleading rules by the State, and that Sergeant Trujillo testified he heard the magistrate judge state in open court that the case was "dismissed with prejudice." And despite the theory of defense counsel that the magistrate judge could have confused "dismissal" with "acquittal" in the contemporaneous written Trial Order, the district court found that the Trial Order was both "the best evidence" of the magistrate judge's actions and "the controlling order."

{40} Accordingly, we hold that substantial evidence supported the district court's findings, based on the reconstructed record and the magistrate's orders, that the magistrate judge's actions did not indicate that he evaluated the sufficiency of the

21

State's evidence but that he actually dismissed the case on procedural grounds, as reflected in the original Trial Order.

**D.  Because the Magistrate's Order Was a Procedural Dismissal Initiated by Defendant and Not an Acquittal on the Merits, the Double Jeopardy Clause of the United States Constitution Does Not Bar Continued Prosecution**

{41}  A defendant "deliberately choosing to seek termination of the proceedings against him" before a determination of his guilt or innocence is voluntarily rejecting the Fifth Amendment protection against being twice placed in jeopardy for the same offense. *Scott*, 437 U.S. at 98-100. As in *Scott*, where after the close of evidence the trial court dismissed charges without evaluating the supporting evidence because the court found "sufficient proof" of prejudice from preindictment delay, "[n]o interest protected by the Double Jeopardy Clause is invaded when the Government is allowed to appeal and seek reversal of such a midtrial termination of the proceedings in a manner favorable to the defendant." *Id.* at 82, 100; *see also Tapia*, 1990-NMSC-038, ¶ 9 (stating that "a 'termination' of the trial in defendant's favor before any determination of factual guilt or innocence [should be treated] like the dismissal for preindictment delay in *Scott*, 437 U.S. at 94-95"); *State v. Vaughn*, 2005-NMCA-076, ¶ 19, 137 N.M. 674, 114 P.3d 354 (holding that a defendant cannot claim double jeopardy protection from retrial where the defendant sought the ruling that terminated

22

the first trial). A defendant's voluntary choice to prevent a final judgment of guilt or innocence does not offend double jeopardy because such a termination does not "enhanc[e] the possibility that even though innocent he may be found guilty." *Scott*, 437 U.S. at 101 (internal quotation marks and citation omitted).

{42}     The fact that defense counsel might have characterized his motion for a premature termination of the trial for procedural reasons as being instead a request for an acquittal can be of no more significance than the magistrate judge's own preferred characterization of his action in granting the motion. This case exemplifies the soundness of the principle that a judge's own characterization of his procedural dismissal as an acquittal on the merits cannot control a reviewing court's assessment of the true nature of the action. Were it otherwise, a defendant seeking a procedural dismissal unrelated to the evidence of his guilt or a judge seeking to insulate his procedural dismissal from review could simply misuse merits terminology to mask the true nature of what the defendant sought or what the court granted. We reject those attempts in this case and reaffirm that substance rather than labels will continue to control our double jeopardy analyses. As we have recently observed in another context, "in much of the . . . work courts are called on to perform, it is necessary to think thoughts and not words." *State v. Strauch*, 2015-NMSC-009, ¶ 13, 345 P.3d

23

317.

{43} Because Defendant successfully urged the magistrate judge to terminate Defendant's trial for procedural reasons without a true determination of guilt or innocence, no matter what words defense counsel or the magistrate judge might have used in characterizing the ruling, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution does not bar continued prosecution of Defendant's DWI charge.

**E.      The Double Jeopardy Clause of the New Mexico Constitution Does Not Bar Continued Prosecution**

{44} Defendant also argues that the nature of our limited jurisdiction court system requires that we interpret the Double Jeopardy Clause of Article II, Section 15 of the New Mexico Constitution more broadly than its counterpart in the Fifth Amendment of the United States Constitution. He contends that the lack of a contemporaneous record and the lack of a requirement that a magistrate judge have a law degree combine to create such confusion about proceedings in the magistrate courts that prosecutors can violate defendants' double jeopardy protections by "using lower courts to test the strength of [their] cases, only to retry defendants in district courts if they are dissatisfied with the results in the non-record courts." His suggested solution is to change our normal fact-finding processes and have the district court

24

"consider and weigh reasonable inferences that can be drawn from the non-record court's decision and view them in the light most favorable to the termination of jeopardy." He cites no state or federal precedent or any other authority for this novel proposition, nor does he demonstrate how it would have changed the outcome in this case. *See McNeill v. Rice Eng'g & Operating, Inc.*, 2010-NMSC-015, ¶ 11, 148 N.M. 16, 229 P.3d 489 ("Where [a party has] failed to cite any contrary authority from this or any other jurisdiction, this Court will presume that no such authority exists.").

{45} Defendant also has presented nothing in the record or in his filings in this Court to indicate that the hypothetical prosecutorial abuses he poses are happening in reality. The record in this case is clear that it was Defendant who sought and obtained a premature termination of his first trial on procedural grounds unrelated to the strength of the State's evidence.

{46} The federal Double Jeopardy Clause and New Mexico law adequately protect a magistrate court defendant from prosecutorial abuse of double jeopardy protections. Constitutional jeopardy attaches in a jury trial when a jury is impaneled and sworn to hear a case and in a bench trial when the trial judge first starts hearing evidence. *State v. Nunez*, 2000-NMSC-013, ¶ 28, 129 N.M. 63, 2 P.3d 264. Accordingly, our Rules of Criminal Procedure for the Magistrate Courts limit the State's discretion in

25

filing a voluntary dismissal of its case without prejudice "prior to the commencement of the trial." Rule 6-506A(A)(1); *see State v. Heinsen*, 2005-NMSC-035, ¶ 25, 138 N.M. 441, 121 P.3d 1040 (affirming long-established New Mexico law that "the State has wide discretion to dismiss a criminal case in magistrate court by filing a nolle prosequi and reinstating charges in district court," which has concurrent jurisdiction over the case). But once jeopardy attaches, the State does not have the discretion to dismiss the case and refile it. If the State fails to dismiss its case before jeopardy attaches, "the State is obliged to follow the course of proceedings it initiated in magistrate court." *State v. Heinsen*, 2004-NMCA-110, ¶ 24, 136 N.M. 295, 97 P.3d 627, *aff'd*, 2005-NMSC-035, ¶¶ 23, 25, 30 (emphasizing, on appeal in this Court, the responsibilities of our district courts "to prevent the State from using the dismissal for purposes of delay or to circumvent the rules" and generally to ensure that "the defendant's due process rights are not unduly infringed"). Defendant has pointed to no example in New Mexico cases or any other data to indicate that our district courts are failing to fulfill that responsibility.

{47}     Our appellate courts also continue to be sensitive to double jeopardy rights of the accused. *See, e.g.*, *State v. Gutierrez*, 2014-NMSC-031, ¶ 31, 333 P.3d 247 (barring retrial after a trial court declared a mistrial (1) for failure of an essential

26

prosecution witness to respond to a subpoena, (2) over objection of the defendant, and (3) after the trial jury had been impaneled and sworn). And in *Marquez*, 2012-NMSC-031, ¶ 25, we emphasized "the need to clarify that our rules require suppression motions to be filed [and determined] prior to trial" in order to prevent the difficulties presented, as in this case, by delaying resolution of those issues until after jeopardy has attached for constitutional purposes. As a result of *Marquez*, our rules of criminal procedure were amended in 2013 to protect both the State's right to judicial review of adverse suppression rulings and the defendant's right not to be twice placed in jeopardy by providing that "[e]xcept for good cause shown, motions to suppress must be filed and determined prior to trial." Rule 6-304(B)(2) NMRA.

{48}     We therefore decline to overrule our precedents by construing the New Mexico Double Jeopardy Clause in the manner Defendant suggests. His federal and state constitutional rights to one determination of his guilt or innocence were not violated by the district court in this case.

**III.   CONCLUSION**

{49}     We affirm the district court's denial of Defendant's motion to dismiss and reverse the Court of Appeals. We remand to the district court for further proceedings consistent with this opinion.

27

{50}    **IT IS SO ORDERED.**


_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**


_____
**BARBARA J. VIGIL, Chief Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**

28